**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JAMIE LABRANCHE** **CIVIL ACTION**

**VERSUS** **NO. 26-139-SDD-RLB**

**STATE OF LOUISIANA, ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings of fact, conclusions of law, and recommendations within fourteen (14) days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 2, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMIE LABRANCHE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-139-SDD-RLB** |
| **STATE OF LOUISIANA, ET AL.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant Nancy Landry's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) ("Motion to Dismiss"). (R. Doc. 16). The motion is opposed. (R. Doc. 18).

Also before the Court is Jeff Landry, State of Louisiana, and Louisiana State Board of Elections' Motion to Dismiss Plaintiff's Complaint or, Alternatively, to Stay the Case under *Purcell* ("Motion to Dismiss"). (R. Doc. 19). The motion is opposed. (R. Doc. 20).

## I. Background

On February 4, 2026, Jamie LaBranche ("Plaintiff"), who is proceeding *pro se*[1], commenced this action, naming as the defendants: the State of Louisiana ("State"); Jeff Landry, in his official capacity as Governor of Louisiana ("Governor Landry"); Nancy Landry, in her official capacity as Secretary of State of Louisiana ("Secretary Landry"); and the Louisiana State Board of Elections ("Board") (collectively, "Defendants"). (R. Doc. 1). Plaintiff, on behalf of himself and all similarly situated "No Party" registered voters in Louisiana, filed this action seeking, among other relief, declaratory judgment that Act I of the 2024 First Extraordinary

[1] Federal courts generally hold *pro se* petitioners to less stringent standards than those required of petitioners represented by counsel. *See Ominski v. Northrop Grumman Shipbuilding, Inc.*, 466 F. App'x 341, 345 (5th Cir. 2012) (affording the plaintiff "the leeway to which she is entitled as a *pro se* petitioner"); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding the allegations of a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with the relevant rules of procedural and substantive law." *NCO Financial Systems, Inc. v. Harper-Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

Session (House Bill No. 17) ("HB 17") is unconstitutional and in violation of the Voting Rights Act and seeking injunctive relief to halt enforcement of HB 17 and related election practices. (R. Doc. 1).

HB 17 was signed into law by Governor Jeff Landry on January 24, 2024 and provides for closed (or semi-closed)[2] party primary elections for certain offices, including the election for a United States Senate seat for Louisiana. *See* La. R.S. 18:1274 ("Any person desiring to become a candidate in a primary election for United States senator or representative in Congress shall file notification of his candidacy and declaration of his qualifications as provided for state candidates in Chapter 5 of this Title.); *see also* H.B. 17, 2024 First Extraordinary Sess. (La. 2024).

HB 17 amends La. R.S. 18:401(B) to state that "Except for the election of persons to a party primary office in a party primary election, all qualified voters of this state may vote on candidates for public office in primary elections without regard to the voters' party affiliation or lack of it, and all candidates for public office who qualify for a primary may be voted on without regard to the candidate's party affiliation or lack of it." H.B. 17, 2024 First Extraordinary Sess. (La. 2024).

Additionally, HB 17 enacts La. R.S. 18:410.1-18:410.10, governing party primary elections. H.B. 17, 2024 First Extraordinary Sess. (La. 2024). Pursuant to HB 17, "[a] person may qualify as a candidate only in a party primary election of the party with which he is affiliated as shown on his voter registration at the time of qualifying for that office." La. R.S. 18:410.4(B). For individuals not affiliated with a political party,

> A. Any person who desires to become a candidate in a general election for a party primary office and who is not registered as being affiliated with a recognized political party shall file his notice of candidacy, which shall be accompanied by a nominating petition as provided in R.S. 18:465, with the

[2] *See Hyers v. Landry,* No. CV 26-286, 2026 WL 1279080, at *1 (E.D. La. May 11, 2026) (characterizing Louisiana's primaries as "semi-closed" after the enactment of HB 17).

> appropriate qualifying official during the qualifying period established for the party primary election. The number of signatures required on such a nominating petition shall be as set forth in R.S. 18:465.
>
> B. A person filing a notice of candidacy as provided in Subsection A of this Section may be nominated only by persons who are qualified to vote on the office he seeks, who sign a nominating petition for him, and who are not affiliated with a recognized political party. The registrar of voters shall reject any signature on a nominating petition not in compliance with this Subsection.

La. R.S. 18:401.8. When running in the United States Senate election for the Louisiana seat, candidates must timely receive "seven hundred fifty [signatures] from within that district" on their nominating petition. La. R.S. 8:465(C)(3)(f).

In his Complaint, Plaintiff's relevant *allegations* include:

- As a registered "No Party" voter, Plaintiff suffers from "vote dilution and disenfranchisement" due to HB 17 "excluding 'No Party' voters" from voting in primaries. (R. Doc. 1 at 3).
- HB 17's "discriminatory effects violate Section 2 of the Voting Rights Act [] by diluting minority and independent voting strength without justification." (R. Doc. 1 at 4).
- Secretary Nancy Landry "increased the qualifying fee from $900 to $3,500, targeting grassroots candidates like LaBranche, who cannot afford it without traditional funding. Additional requirements include over 2,500 signatures for ballot access." (R. Doc. 1 at 4).
- As a declared candidate for the Louisiana seat in the United States Senate in the 2026 election, the closed primary system excludes Plaintiff, a "No Party" candidate, from competing in party primaries, forcing him into a general election where party nominees have already secured advantages. (R. Doc. 1 at 3).
- HB 17 requires Plaintiff to expend additional resources on signature gathering by increasing the number of signatures required, discriminates against candidates of modest means by increasing the qualifying fee, and damages Plaintiff's reputation as a viable grassroots candidate.
- Plaintiff's injuries are fairly traced back to Defendants: "Governor Landry signed HB 17; Secretary Landry enforces the fee increase and signature requirements; and the State and Board implement the closed system." (R. Doc. 1 at 3).
- "The system transfers power from voters to partisan actors, allowing unlimited objections without standing, burdening core political speech, denying equal protection, and violating due process." (R. Doc. 1 at 4).

Plaintiff's causes of action include (1) violation of Section 2 of the Voting Rights Act, (2) violation of the First Amendment under 42 U.S.C. § 1983, (3) violation of the Fourteenth Amendment Equal Protection Clause under 42 U.S.C. § 1983, and (4) violation of the Fourteenth Amendment Due Process Clause under 42 U.S.C. § 1983. (R. Doc. 1 at 5). Plaintiff requests declaratory judgment that HB 17 and its related practices violate the Voting Rights Act and the U.S. Constitution, injunctive relief enjoining Defendants from enforcing HB 17 and proceeding with Senate election activities, certification of the class of "No Party" voters, and an award of costs and any other relief deemed just. (R. Doc. 1 at 6).

On April 20, 2026, Plaintiff filed an Ex Parte Motion for Temporary Restraining Order (TRO) pursuant to Fed. R. Civ. P. 65(b) ("Motion for TRO"). (R. Doc. 17). The undersigned has issued a separate Report and Recommendation on that motion denying the Motion for TRO. (R. Doc. 24). Plaintiff filed an objection to the Report and Recommendation and a Motion for De Novo Review and Expedited Ruling on July 2, 2026. (R. Doc. 25). On July 22, 2026, Chief Judge Dick adopted the Report and Recommendation and denied the Motion for TRO. (R. Doc. 28).

Secretary Landry filed a Motion to Dismiss on April 17, 2026. (R. Doc. 16). Governor Landry, the State, and the Board filed a Motion to Dismiss on May 6, 2026. (R. Doc. 19). Defendants, in their respective Motions to Dismiss, assert that Plaintiff lacks subject matter jurisdiction as Defendants are entitled to sovereign immunity, Plaintiff does not have Article III standing, and Plaintiff has failed to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). (R. Doc. 16-1; R. Doc. 19-1). Governor Landry also argues that he is protected by legislative immunity. (R. Doc. 19-1 at 5). Additionally, Defendants argue that even if the case is justiciable and Plaintiff's claims are cognizable, the Court must stay the suit pursuant to the U.S. Supreme

Court decision in *Purcell v. Gonzalez*, holding that federal courts should not enjoin a state's election laws in the period too close to an election. (R. Doc. 16-1; R. Doc. 19-1).

Plaintiff filed an Opposition to Secretary Landry's Motion to Dismiss on April 21, 2026 (R. Doc. 18) and an Opposition to Governor Landry, the State, and the Board's Motion to Dismiss on May 12, 2026 (R. Doc. 20). Plaintiff asserts that sovereign immunity does not bar the suit under *Ex parte Young*, he has Article III standing, he states a plausible claim for relief, legislative immunity does not bar claims against Governor Landry, and *Purcell* does not require the Court to stay the proceedings. (R. Doc. 18; R. Doc. 20).

## II. Legal Standards

### A. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

A Rule 12(b)(1) motion to dismiss seeks dismissal of a complaint for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to hear the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984). "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*.

"Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Without subject-matter jurisdiction, a federal court simply has no authority to decide the case." *Pidgeon v. Parker*, 46 F. Supp. 3d 692, 697 (S.D. Tex. Aug. 28, 2014). "[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

### B. Eleventh Amendment Immunity

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of other states, or foreign nations. U.S. Const. Amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). "When a state agency is named the defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 281 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing *Howlett v. Rose*, 496 U.S. 356, 365, (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

The State of Louisiana has not waived its immunity from suit in federal court. *See* La. Rev. Stat. Ann. § 13:5106(A) (2010) (providing that "[n]o suit against the state or a state agency

or political subdivision shall be instituted in any court other than a Louisiana state court"); *see also Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a).

Under the *Ex parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception "rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 168. (citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id*. (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern*, 440 U.S. at 337.

**C. Legislative Immunity**

Certain government officials enjoy absolute immunity from civil litigation. "Once it is determined that members are acting within the 'legitimate legislative sphere,' the Speech or Debate Clause is an absolute bar to interference." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975); *see also Bogan v. Scott–Harris*, 523 U.S. 44, 48 (1998) ("The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo–American law"); *Kilbourn v. Thompson*, 103 U.S. 168, 202–04 (1880);

*Davis v. Passman*, 544 F.2d 865, 878 (5th Cir.1977) (discussing the scope of absolute legislative immunity).

"Legislative immunity protects officials fulfilling legislative functions even if they are not 'legislators.'" *Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. In determining whether legislative immunity applies, courts have distinguished between (1) establishing a policy, act, or law, and (2) enforcing or administering it. *Hughes v. Tarrant Cnty.*, 948 F.2d 918, 920 (5th Cir. 1991). The Fifth Circuit "uses two tests to determine whether a defendant's actions were 'functionally legislative' so as to warrant protection under the doctrine of absolute legislative immunity." *Gatehouse Water LLC v. Lost Pines Groundwater Conservation Dist.*, No. A-22-CV-00132-LY, 2022 WL 3362287, at *3 (W.D. Tex. Aug. 15, 2022) (*citing Hughes*, 948 F.2d at 920)).

Under the first test, the action is legislative if the underlying facts on which the decision is based pertain to "legislative facts" like "generalizations concerning a policy or state of affairs," and the action is not legislative "if the underlying facts are more specific and relate to a particular individual or situation." *Id*. (citing *Hughes*, 948 F.2d at 920)). The second test focuses on the "particularity of the impact" of the challenged action or decision; "[i]f the action involves establishment of a general policy, it is legislative," but "[i]f the challenged action or decision singles out 'specific individuals and affect[s] them differently from others, it is administrative.'" *Id*. (quoting *Hughes*, 948 F.2d at 920)).

### D. Article III Standing

Article III standing is a "threshold question in every case; '[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying

case.'" *Cataldie v. Seaside Healthcare Sys., LLC*, No. 19-195, 2020 WL 1433538, at *2 (M.D. La. Mar. 23, 2020) (*quoting United States v. AVX Corp*., 962 F.2d 108, 113 (1st Cir. 1992)). Article III of the United States Constitution extends the judicial power of the United States to actual "cases" and "controversies." U.S. Const. art. III, § 2; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*citing Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's "case" or "controversy" language.'" *Choice Inc. of Texas v. Greenstein*, 691 F.3d at 715 (*quoting DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). The Supreme Court has interpreted "cases" and "controversies" to refer to those types of disputes "traditionally amenable to, and resolved by, the judicial process." *Id*. (*citing Muskrat v. United States*, 219 U.S. 346, 356-357 (1911)). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (*citing Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

To have Article III standing, the Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant (causation), and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff who files a complaint in federal court, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). To satisfy this burden at the pleading stage, the plaintiff must clearly allege facts to satisfy each element of Article III standing. *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 518, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975)). Moreover, the plaintiff must demonstrate standing separately for each form of relief that he seeks. *Friends of the Earth*, 528

U.S. at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). When a party cannot establish the standing requirements imposed by Article III, courts lack subject matter jurisdiction over the case. *Bell v. American Traffic Solutions, Inc.*, 371 Fed. App'x 488, 489 (5th Cir. 2010); *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009).

**E. Rule 12(b)(6) Motion – Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust*

*Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

**F. Voting Rights Act**

The Voting Rights Act provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote" due to race, color, or being a member of a language minority group. *See* 52 U.S.C. § 10301. To sustain a claim under the Voting Rights Act, proof of discriminatory intent is sufficient but not necessary; instead, a Plaintiff may prove a violation through a more restrictive intent test or the more lenient results test. *See Thornburg v. Gingles*, 478 U.S. 30, 43–44 (1986). Under the results test, the essential "question ... is whether as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice." *Id*. at 44. To effectively answer this question, "a court must assess the impact of the contested structure or practice on minority electoral opportunities on the basis of objective factors." *Id*.

The 5th Circuit had adopted a two-part framework to evaluate Section 2 claims under the results test: (1) the challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice and (2) that burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of

the protected class. *Veasey v. Abbott*, 830 F.3d 216, 244 (5th Cir. 2016) (citing *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 240 (4th Cir. 2014)).

## III. Analysis – Rule 12(b)(1) – Subject Matter Jurisdiction

### A. Eleventh Amendment Immunity

As an initial matter, the 5th Circuit has held that there is no sovereign immunity with respect to Voting Rights Act claims. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020). The Voting Rights Act, "which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017); *see also Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020). The following analysis regarding the applicability of sovereign immunity for the individual Defendants therefore applies solely to Plaintiff's § 1983 claims. *See Will*, 491 U.S. at 71 (Section 1983 does not abrogate Eleventh Amendment immunity as "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

For the reasons stated below, the Court finds that Defendants are entitled to Eleventh Amendment immunity and dismisses Plaintiff's asserted § 1983 claims against Defendants without prejudice. *Anderson v. Jackson State Univ.*, 675 F. App'x 461, 464 (5th Cir. 2017) ("The dismissal was based on the grounds that [the defendant] was entitled to Eleventh Amendment immunity, and so should have been without prejudice.").

#### i. The State

Plaintiff has named the State of Louisiana as a Defendant. No party suggests that the State has waived sovereign immunity. Without a waiver, this Court does not have subject matter jurisdiction in a suit against the State. *See Kmart Corp. v. Kroger Co.*, 2012 WL 2126953, at *4 (N.D. Miss. June 11, 2012) (*citing Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002)) ("A

waiver of sovereign immunity is strictly construed and thus must be unequivocally expressed by Congress ... Plaintiffs must show such consent, as plaintiffs assert federal jurisdiction is proper."); *Richardson v. S. Univ*., 118 F.3d 450, 453 (5th Cir. 1997) ("Louisiana has not waived its sovereign immunity for suits brought in federal court"). Therefore, Plaintiff's § 1983 claims against the State must be dismissed.[3]

**ii. The Board**

Plaintiff has also named the Board as a defendant. The Board, as an "arm of the state," also receives Eleventh Amendment immunity in federal court, barring this Court from exercising subject matter jurisdiction in a suit against the Board. *See Richardson*, 118 F.3d at 452 (a state's sovereign immunity extends to state agencies and departments if the state is the real party in interest). To be considered an "arm of the state," the Court considers the following factors:

> (1) whether the state statutes and case law characterize the agency as an arm of the state;
> (2) the source of the funds for the entity;
> (3) the degree of local autonomy the entity enjoys;
> (4) whether the entity is concerned primarily with local, as opposed to state-wide problems;
> (5) whether the entity has authority to sue and be sued in its own name; [and]
> (6) whether the entity has the right to hold and use property.

*Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).

For the first factor, the Louisiana Election Code creates the State Board of Election Supervisors, making it a "creature of state law."[4] *See* La. R.S. 18:23; *see also Richardson*, 118 F.3d at 454 (Southern University is a "creature of state law" as it is established by the Louisiana

[3] The *Ex parte Young* exception to the Eleventh Amendment immunity cannot apply to the State. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (holding that to fall within the *Ex parte Young* exception to sovereign immunity under the Eleventh Amendment, a plaintiff must name individual state officials as defendants in their official capacities).

[4] Although Plaintiff named "Louisiana State Board of Elections" as Defendant in this matter, this entity does not exist. The Court will assume Plaintiff intended to name the Louisiana State Board of Election Supervisors as Defendant.

Constitution). Further, the Board is "created and established in the Department of State" and is comprised of government officials, including (1) the lieutenant governor, (2) the secretary of state, (3) the attorney general, (4) the commissioner of elections or a designee of the secretary of state, (5) one member of the Clerks of Court Association, (6) one member of the Registrars of Voters Association, (7) one member appointed by the governor from a list of nominees submitted by various universities in Louisiana, and (8) one member of the Police Jury Association of Louisiana. *See* La. Stat. Ann. § 18:23(A). Although there is no case law directly determining whether the Board is a state agency for the purposes of Eleventh Amendment immunity, federal courts have held that the Eleventh Amendment bars suits against state boards of elections.[5]

For the second factor, the Board is funded by the State out of funds appropriated to the office of the secretary of state for such purpose.[6]

---

[5] *See Iwachiw v. N.Y.C. Bd. of Elections,* 126 Fed. Appx. 27, 28 (2d Cir. 2005) (New York State Board of Elections); *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections*, 617 N.E.2d 1120, 1122 (Ohio 1993) ("The board of elections...is strictly a board and an arm of the state government."); *Smith v. Arkansas Bd. of Election Commissioners*, No. 4:15-CV-521-JM-BD, 2016 WL 1367771, at *4 (E.D. Ark. Mar. 18, 2016), *report and recommendation adopted*, No. 4:15-CV-00521 JM/BD, 2016 WL 1357761 (E.D. Ark. Apr. 5, 2016), *judgment entered*, No. 4:15-CV-00521 JM/BD, 2016 WL 1337337 (E.D. Ark. Apr. 5, 2016) (Arkansas Board of Election Commissioners); *Brody v. N. Carolina State Bd. of Elections*, No. 3:10CV383, 2011 WL 1843199, at *10 (W.D.N.C. May 16, 2011), *aff'd on other grounds*, 458 F. App'x 231 (4th Cir. 2011) (North Carolina State Board of Elections); *Marin v. Sec'y of the Commonwealth of Pennsylvania*, No. 1:15-CV-1550, 2016 WL 11452961, at *9 (M.D. Pa. Apr. 19, 2016) (Pennsylvania State Board of Elections); *Casey v. Clayton Cnty., GA*, No. CIVA 104CV-00871 RWS, 2007 WL 788943, at *8 (N.D. Ga. Mar. 14, 2007) ("Certainly, if the Court were to confine its inquiry to whether the Board acts as an arm of the state for purposes of conducting elections in general, there can be little doubt that Eleventh Amendment immunity would attach.").

[6] *State v. Center for Tech and Civic Life*, App. 3 Cir. 2022, 350 So.3d 534, 2021-670, 2021-671 (La. App. 3 Cir. 3/30/22), *writ denied*, 341 So. 3d 568, 2022-00721 (La. 6/28/22) (election officials, which included parish registrars of voters and clerks of courts, were not "political subdivisions" permitted to accept private money, but rather, were state offices created under the State Constitution, and thus, election expenses they incurred could only be paid by the state from funds appropriate from the Secretary of State); *see also* La. Stat. Ann. § 18:1265 (payment of presidential electors for attending meeting of electors); *see also* La. Stat. Ann. § 18:1400.9 (overtime payment to secretary of state for early voting and during the election); *see also* La. Stat. Ann. § 18:1382 (half of the costs for purchase of sites for proper storage of voting machines); *see also* La. Stat. Ann. § 18:1400.2 (cost of publication of location of polling places, renting polling places, drayage, setting up voting machines, compensating commissioners and deputy parish custodians, and transmitting election returns for gubernatorial and congressional elections); *see also* La. Stat. Ann. § 18:1400.1 (cost of ballots and election materials used in gubernatorial or congressional candidate elections).

In regard to the third and fourth factors, the Board does not have local autonomy as the composition of the board is controlled by the state, and it is only able to elect a chairman and a vice chairman from its members. *See* La. Stat. Ann. § 18:23(A). The Board also meets only upon call of the chairman or upon the request of any three members. *See* La. Stat. Ann. § 18:23(F). The Board solely handles state-wide issues because there are individual boards of election supervisors created for each parish to supervise the preparation of and to conduct all elections held in the parish; the Board has more general duties, such as reviewing election laws and procedures to report to the legislature, conducting administrative complaint proceedings regarding violations of the Help America Vote Act of 2022 for an election for federal office, and all "other powers and duties as are necessary to effectuate the purposes of the board." *See* La. Stat. Ann. § 18:24 (stating the powers and duties of the Board); *see also* La. Stat. Ann. § 18:423 (creating board of election supervisors for each parish).

For the final two factors, although the Board also has the power "[t]o employ an executive director, legal counsel, and such other personnel as the board deems necessary and appropriate," La. Stat. Ann. § 18:24(A)(4), there is no clear indication that the Board may sue or be sued in its own name. Additionally, there is no direct authority for the Board to hold and use property. However, these powers may fall under those "necessary to effectuate the purposes of the board" as provided in La. Stat. Ann. § 18:24(A)(5). Even if the Board can be sued and can hold and use property, these final two factors do not require a finding against sovereign immunity. *See Richardson,* 118 F.3d at 456 (Although Southern's Board can be sued and can hold and use property, because Louisiana has not waived its immunity from suit and federal court and, most importantly, money judgments against the Board are paid by the State of Louisiana,

these final two factors do not prevent Southern's board being entitled to Eleventh Amendment immunity).

Thus, the Board is considered an "arm of the state" for the purposes of Eleventh Amendment immunity, and Plaintiff's § 1983 claims against the Board must be dismissed.[7]

**iii. Governor Landry, in his official capacity**

Plaintiff also names Governor Landry, in his official capacity, as Defendant in this lawsuit. Eleventh Amendment immunity ordinarily extends to state official acting in their official capacity. *White Hat v. Murrill*, 141 F. 4th 590, 599 (5th Cir. 2025) (*citing Edelman v. Jordan*, 415 U.S. 651, 663–69, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) (extending sovereign immunity to state officers in their official capacities)). To the extent Plaintiff seeks monetary relief from Governor Landry under federal law, those claims are barred by the Eleventh Amendment. *See McZeal v. Louisiana*, No. CV 19-517-SDD-RLB, 2020 WL 7344611, at *3 (M.D. La. Oct. 27, 2020), *report and recommendation adopted*, No. CV 19-517-SDD-RLB, 2020 WL 7344703 (M.D. La. Dec. 14, 2020) ("Eleventh Amendment immunity extends to suits for monetary damages against a state official or employee sued in his official capacity.") (citing *Lozano v. Jones*, 2017 WL 872678, at *1 (E.D. Tex. Jan. 27, 2017), *report and recommendation adopted*, 2017 WL 903370 (E.D. Tex. Mar. 3, 2017)

However, the *Ex parte Young* doctrine permits suits against state officials in their official capacities that seek the enjoinment of a state law that allegedly conflicts with federal law. *White Hat*, 141 F. 4th at 599 (citing *Ex parte Young*, 209 U.S. at 155–56). To determine whether the exception applies, the 5th Circuit employs two concurrent analyses: (1) whether the complaint

[7] The *Ex parte Young* exception to the Eleventh Amendment immunity cannot apply to the Board as it is a political subdivision of the state. *Raj*, 714 F.3d at 328 (holding that to fall within the *Ex parte Young* exception to sovereign immunity under the Eleventh Amendment, a plaintiff must name individual state officials as defendants in their official capacities).

alleges an ongoing violation of federal law and seeks relief properly characterized as prospective and (2) whether the named official holds a sufficient "connection [to] the enforcement of the act." *Id*. at 600.

Plaintiff's complaint alleges that HB 17's implementation of the closed system burdens core political speech and associational rights of the First Amendment, arbitrarily discriminates against "No Party" candidates and voters in violation of the Fourteenth Amendment Equal Protection Clause, and violates the Fourteenth Amendment Due Process Clause by "[p]ermitting unlimited objections without standing and arbitrary rule changes" and "lacking fair notice and opportunity to be heard." (R. Doc. 1 at 5). Further, Plaintiff's requested relief asks the Court to "issue a TRO and preliminary injunction enjoining Defendants from enforcing HB 17, proceeding with qualifying (ending February 13, 2026), or any election activities until adjudication" and to "issue a permanent injunction barring enforcement of the challenged rules." (R. Doc. 1 at 6). Plaintiff alleges violation of the U.S. Constitutional Amendments, which constitutes violation of federal law, and Plaintiff requests injunctive relief, which is properly characterized as prospective relief, meeting the first analyses under *Ex parte Young*.[8] Thus, whether *Ex parte Young* applies is determined by whether Governor Landry holds a sufficient connection to the enforcement of HB 17.

"What constitutes a sufficient connection to the enforcement is not clear from our jurisprudence." *City of Austin v. Paxton*, 943 F.3d 993, 998–1002 (5th Cir. 2019) (quotation omitted). The state official must have "the particular duty to enforce the statute in question and a

---

[8] *See White Hat*, 141 F.4th at 600 (the requirement was satisfied when the complaint named the Attorney General in her official capacity, alleged that enforcement of the [statute] violated the Due Process Clause and First Amendment, and sought enjoinment of the statute as prospective relief); *see also McZeal*, 2020 WL 7344611, at *4 ("Construed liberally, as a court must do in the context of a *pro se* plaintiffs, the Plaintiffs here are requesting prospective declaratory or injunctive relief in the form of an order or judgment prohibiting further allegedly fraudulent debt collection acts. Plaintiffs' claims against the individual Defendants in their official capacities for prospective declaratory or injunctive relief will, therefore, survive Defendants' Motion to Dismiss at this stage.")

demonstrated willingness to exercise that duty." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quotation omitted). An official must have more than a "general duty to see that the laws of the state are implemented" to trigger the *Ex parte Young* exception. *City of Austin*, 943 F.3d at 999–1000 (*quoting Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Analysis is "provision-by-provision," and the state official must enforce "the particular statutory provision that is subject of the litigation." *Texas All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (citation omitted).

Plaintiff alleges that Governor Landry "signed HB 17 into law on January 24, 2024, and oversees its implementation." (R. Doc. 1 at 2). The 5th Circuit has consistently held that suits against governors, when the connection is "a general duty to see that the laws of the state are implemented," are effectively claims against the state and therefore subject to Eleventh Amendment immunity.[9] Plaintiff has not alleged that Governor Landry has a connection to the enforcement of HB 17; merely signing HB 17 into law is insufficient. *See United States v. Abbott*, 85 F.4th 328, 335 (5th Cir. 2023) (Governor Abbott signed the executive order but tasked the Texas Department of Public Safety to enforce the law, so the Department of Public Safety, not the governor, was the proper defendant to enjoin under *Ex parte Young*). Therefore, the *Ex parte Young* exception is not applicable to Governor Landry, and all § 1983 claims asserted against him must also be dismissed.

---

[9] *See Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 402 (5th Cir. 2025) (constitutional obligation to "cause the laws to be faithfully executed" was insufficient for a connection to enforcement required by *Ex parte Young*); *see also Morris*, 739 F.3d 740 (governor had no particular duty to enforce inmate's fee for annual health care services and therefore was protected by sovereign immunity); *Okpalobi v. Foster*, 244 F.3d 405, 423 (5th Cir. 2001) (no enforcement connection existed between Louisiana's governor and Louisiana's statute making abortion providers liable to parties in tort).

### iv. Secretary Landry, in her official capacity

The analysis regarding whether Eleventh Amendment immunity applies to Secretary Landry mirrors the analysis for Governor Landry. As a state official, Secretary Landry is entitled to Eleventh Amendment immunity unless the *Ex parte Young* exception applies. *See White Hat*, 141 F. 4th at 599-600. Using the 5th Circuit's standards, since Plaintiff's complaint alleges a violation of federal law (the First Amendment and Fourteenth Amendment) and requests prospective injunctive relief, whether *Ex parte Young* applies is determined by whether Secretary Landry holds a sufficient connection to the enforcement of HB 17.[10]

Plaintiff alleges that Secretary Landry "administers elections, sets qualifying fees, and enforces ballot access requirements, including the increased fee from $900 to $3,500 and the signature requirements challenged herein." (R. Doc. 1 at 2-3). The Louisiana Election Code delineates enforcement to the Secretary of State, the Parish Boards of Election Supervisors, and the Registrar of Voters. *See* La. R.S. 18:1 *et seq*. Plaintiff attempts to rely on the Secretary of State's general duties, such as her role as "chief election officer" pursuant to La. R.S. 18:421(A) and her duty to "[p]rescribe uniform rules, regulations, forms, and instructions, which [] shall be applied uniformly by each registrar of voters in the state," and "[p]erform such other functions and duties and exercise such other powers as are conferred upon [her] by this Title." La. R.S. 18:18(A). However, these general duties are insufficient to create an enforcement connection to HB 17 as the "general duties under the [] Code fail to make the Secretary the enforcer of specific election code provisions." *Texas All. for Retired Americans*, 28 F.4th at 674. Plaintiff specifically seeks to enjoin enforcement of HB 17, but Plaintiff does not allege that Secretary Landry has a

---

[10] *See* footnote 8.

duty to enforce the changes imposed by HB 17, namely the implementation of the closed (or semi-closed) primary system.

Further, Plaintiff alleges "Secretary Landry increased the qualifying fee [for candidacy] from $900 to $3,500, targeting grassroots candidates like LaBranche, who cannot afford it without traditional funding. Additional requirements include over 2,500 signatures for ballot access." (R. Doc. 1 at 4). However, neither the fee nor the signature number is increased by HB 17, and Plaintiff fails to point to another law that enacted these changes. Regardless, Secretary Landry's Opposition asserts that the Registrar of Voters is responsible for enforcing the signature requirements for candidacy, and this Court agrees. *See* La. R.S. 18:410.8 ("The registrar of voters shall reject any signature on a nominating petition not in compliance with this Subsection."); *see also* La. R.S. 18:465 ("A registrar may stop certifying the signatures on a nominating petition when the total number of the signers he has certified as having signed the petition timely and as being registered to vote on the office the candidate seeks equals one hundred fifteen percent of the number of qualified voters required to nominate the candidate for the office he seeks.") As to the fee requirements, a "No Party" candidate is not required to pay a fee, so there is no enforcement required or even possible. *See* La. R.S. 18:410.4 ("A candidate whose notice of candidacy is accompanied by a nominating petition shall not be required to pay any qualifying fee or any additional fee.").

Therefore, the *Ex parte Young* exception is not applicable to Secretary Landry, and all § 1983 claims asserted against her must also be dismissed.

**B. Legislative Immunity**

Governor Landry is additionally entitled to legislative immunity. Plaintiff is challenging Governor Landry's action of signing HB 17 into law. First, the Supreme Court has held that the

act of a governor signing or vetoing a bill is an integral step in the legislative process that entitles the governor to legislative immunity. *See Smiley v. Holm,* 285 U.S. 355, 372–373, 52 S. Ct. 397, 401–02, 76 L. Ed. 795 (1932).

Further, using the 5th Circuit's tests, the decision to sign HB 17 into law is based on the underlying facts of general policy and state affairs, not related to a particular individual or situation. Additionally, the act involves the establishment of a general policy and does not single out specific individuals. Therefore, signing HB 17 into law is undoubtedly a legislative act, entitling Governor Landry to legislative immunity with respect to his decision to sign HB 17 into law.

**C. Article III Standing**

To have Article III standing, Plaintiff needs to allege (1) injury in fact, (2) causation, and (3) redressability. *Lujan*, 504 U.S. at 560. First, Plaintiff states that he is injured by HB 17 both as a candidate and as a voter. As a "No Party" candidate, Plaintiff alleges the closed primary system excludes him from competing in party primaries, forcing him into a general election where party nominees have already secured advantages, which "diminishes his vote share, requires him to expend additional resources on signature gathering [], and damages his reputation as a viable grass roots candidate." (R. Doc. 1 at 3). Plaintiff also claims that the increased qualifying fee and increase in the number of signatures required discriminates against candidates "of modest means" like himself and has already harmed his campaign. (R. Doc. 1 at 3). Plaintiff asserts HB 17 "threaten[s] his ability to compete fairly, potentially causing him to lose the election." (R. Doc. 1 at 3). As a "No Party" voter, Plaintiff alleges he suffers an injury in fact because he is "disenfranchised from primaries that decide outcomes." (R. Doc. 1 at 3).

First, as a voter, Plaintiff cannot suffer a cognizable injury because "No Party" voters are allowed to vote in party primaries pursuant to HB 17. *See* La. R.S. 18:410.3(B) ("Voters not affiliated with a political party may vote in a major party primary if a party primary ballot is selected by the voter prior to casting his ballot, but such a voter may vote only in one major party primary. If an unaffiliated voter chooses to vote in the first party primary of one political party, the unaffiliated voter shall not vote in the second party primary of another political party."). Thus, Plaintiff also cannot serve as a representative for his proposed class of "No Party" voters as the class of voters does not have standing.

Second, as a candidate, the Supreme Court has held that candidates in an election have a cognizable injury in fact when challenging unlawful election laws and practices as "[t]hey have an obvious personal stake in how the result is determined and regarded[, and d]epartures from the preordained rules cause them particularized and concrete harm." *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 79, 146 S. Ct. 513, 520, 223 L. Ed. 2d 357 (2026). Therefore, since Plaintiff alleges he is a candidate in the upcoming Senate election and is harmed by HB 17, Plaintiff has adequately alleged he suffered an injury in fact as a candidate.

Even though Plaintiff can show an injury-in-fact as a candidate, Plaintiff likely cannot it show that the issue is redressable in court by any named Defendants.[11] Plaintiff alleges his claim is redressable because "[a] favorable decision enjoining HB 17 and related rules would redress the injuries by restoring open access, reducing barriers, and allowing fair competition." (R. Doc. 1 at 3). However, as Defendants properly point out, a federal court may not "lawfully enjoin the

[11] "Article III standing analysis and *Ex [P]arte Young* analysis significantly overlap." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quotation omitted). A threat of enforcement from a state official with a particular duty to do so sufficiently constitutes a "threatened injury" for Article III standing. *Id*. (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015)). The state official is the cause of that injury, and enjoining his enforcement would redress the harm.

world at large or purport to enjoin challenged laws themselves." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 142 S. Ct. 522, 525, 211 L. Ed. 2d 316 (2021). The Supreme Court stated that a party may not attack an unenforceable statute because a court may not issue "an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 593 U.S. 659, 673, 141 S. Ct. 2104, 2116, 210 L. Ed. 2d 230 (2021). When "no respondent can or will enforce [the statute]," the court cannot redress the issue. *Whole Woman's Health*, 142 S. Ct. at n.1.[12]

First, the fee and signature requirements for the nominating petitions are not governed by HB 17. Also, as Secretary Landry states in her Motion to Dismiss, the registrar of voters is the party enforcing the nominating petition fee and signature requirements as the registrar must accept or reject the nominating petitions. (R. Doc. 16-1 at 8); s*ee* La. R.S. 18:410.5 (requiring the registrar of voters to reject any signature on a nominating petition when (a) the candidate and individual signing are not affiliated with the same recognized political party, (b) the signer is not qualified to vote on the office sought, and/or (c) the signer signed the nominating petition over 120 days before the qualifying period opened for candidates in the party primary election); *see also* La. R.S. 18:410.8(B) (requiring the registrar of voters to reject any signature on a nominating petition for a person not affiliated with a recognized political party desiring to become a candidate in a general election by a person not qualified to vote on the office sought and/or affiliated with a recognized political party). Therefore, the registrar of voters would be the proper party to enjoin regarding the nominating petitions, not the Defendants.

[12] Although Plaintiff also requests declaratory relief, the Court does not consider declaratory relief when determining whether standing under Article III exists. *See California*, 593 U.S. at 673 (declaratory judgment "is the very kind of relief that cannot alone supply jurisdiction otherwise absent"); *see also Nashville, C. & St. L. R. Co. v. Wallace*, 288 U.S. 249, 262, 53 S. Ct. 345, 77 L. Ed. 730 (1933) (inquiring whether a suit for declaratory relief "would be justiciable in this Court if presented in a suit for injunction"); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197, 134 S. Ct. 843, 187 L.Ed.2d 703 (2014) (noting that a court looks to "the nature of the threatened action in the absence of the declaratory judgment suit" to determine whether jurisdiction exists).

Plaintiff's argument with regard to HB 17 is more general, arguing the closed primary system "excludes him from competing in party primaries" and "forc[es] him into a general election where party nominees have already secured advantages." (R. Doc. 1 at 3). Plaintiff believes enjoining HB 17 would "redress the injuries by restoring open access, reducing barriers, and allowing fair competition." (R. Doc. 1 at 3). Party primary elections are handled by the individual parish board of election supervisors within each respective parish. *See* La. R.S. 18:423(B) ("The parish board of election supervisors shall supervise the preparation for and the conduct of all elections held in the parish."). While the individual parish boards of election supervisors are likely the parties responsible for implementing the closed primary system, it is not abundantly clear that the named Defendants do not have a supervisory role in enforcing HB 17. No parties assert a persuasive argument regarding the proper party to enforce the implementation of a closed primary system, and HB 17 does not clearly state the entity responsible for its enforcement. Even if enjoining Defendants *may* redress Plaintiff's injuries, Plaintiff has not alleged sufficient grounds in his Complaint to state a claim entitling him to injunctive relief, so his claims must be dismissed.

**IV. Analysis – Rule 12(b)(6) – Failure to State a Claim**

The Court will not address the merits of Plaintiff's § 1983 claims as it does not have subject matter jurisdiction due to sovereign immunity. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam) (when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits); *see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286-87 (addressing a Rule 12(b)(1) motion to dismiss first prevents a court without jurisdiction from prematurely dismissing a case with prejudice); *see also Fields v. Dep't*

*of Pub. Safety*, 911 F. Supp. 2d 373, 384 (M.D. La. 2012) (declining to address the merits of plaintiff's claims as it lacks subject matter jurisdiction over the claims).

Plaintiff's sole remaining claim, if Plaintiff has Article III standing, is for violation of Section 2 of the Voting Rights Act.[13] However, Section 2 of the Voting Rights Act provides that a "voting qualification or prerequisite to voting or standard, practice, or procedure" shall not be "imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or being in a member of a minority language group. 52 U.S.C.A. § 10301. The Court is unaware of, and Plaintiff fails to provide, any legal support under which the protections of Section 2 of the Voting Rights Act are extended to an individual's political party affiliation or status as a "no-party" voter. Therefore, Plaintiff has failed to state a claim upon which relief may be granted pursuant to Section 2 of the Voting Rights Act, and his claim must be dismissed.

**V. Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** that Secretary Nancy Landry's Motions to Dismiss (R. Doc 16) and Governor Jeff Landry, the State of Louisiana, and the Louisiana State Board of Elections' Motion to Dismiss (R. Doc. 19) be **GRANTED**, and Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE.**

Signed in Baton Rouge, Louisiana, on September 2, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

[13] Congress abrogated sovereign immunity with respect to the Voting Rights Act. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020); *see also OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017); *see also Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020).